Kelley-Williamson Co., a Corporation, Plaintiff-Appellee, v. City of Rockford, a Municipal Corporation, Defendant-Appellant.

Gen. No. 64–121.

Second District.

August 13, 1965.

Lawrence J. Ferolie, of Rockford (Lawrence J. Ferolie, of counsel), for appellant.

Reno, Zahm, Folgate & Skolrood, of Rockford (Ralph S. Zahm, of counsel), for appellee.

MR. JUSTICE MORAN delivered the opinion of the court.

This appeal, transferred by order of the Supreme Court to this court for disposition, arises from a declaratory judgment order entered by the trial court. The plaintiff-appellee, Kelley-Williamson Co., filed a complaint against the defendant-appellant, City of Rockford, seeking to have a zoning ordinance, as applied to plaintiff's property, declared invalid.

The plaintiff is the owner of a gasoline service station located on the southeast corner of North Main and Churchill Streets in Rockford, Illinois. The site of the station, referred to as the westerly part of lots 4 and 5, is zoned "C" residential and is completely surrounded by residential zoning for both single and multiple family uses. The subject property has been zoned "C" since 1923. However, prior to the enactment of the zoning ordinance this site had been utilized as a grocery store and thereafter, since 1933, it has been used for a gasoline service station. The defendant has recognized this to be a nonconforming use. During the period of years between 1932 and 1958, the improvements upon the premises have been altered and expanded on five occasions. One of the provisions of the defendant's ordinance pertaining to nonconforming uses prohibits any structural alterations or extensions which would exceed thirty percent of the cubic contents thereof. It is agreed that the maximum alterations or extensions of the station have been made.

Immediately to the south is lot 6, which is also classified as "C" residential. This lot had been improved with a two-family dwelling and two-car garage. In

December, 1962, the plaintiff purchased lot 6 and had the dwelling removed, but allowed the two-car garage to remain.

The plaintiff, desirous of using only lot 6 for the temporary parking of its patron's automobiles during the period of servicing, applied to the defendant for a reclassification of use. Under the present zoning, the lot could be used for off-street parking purposes, provided such parking would be incident to a "C" residential use, which does not include a service station. The defendant denied the plaintiff's request, and as a consequence a declaratory judgment action was filed.

It is interesting to note that neither the allegations nor the prayer of the complaint requested any relief as to lots 4 and 5, but only as to lot 6. The record fails to disclose any amendment of the complaint either before or after judgment—nor has either side raised this point.

Plaintiff's witnesses testified that the contemplated use would substantially raise the value of the premises without decreasing values of neighboring properties, except for increased activity and noise; that the highest and best use of lot 6 would be as an incident to the adjoining station for parking automobiles; that it would be beneficial to the public if an additional driveway entrance to the station could be located upon and across lot 6; that if two of the three bays of plaintiff's station, located on lots 4 and 5, were deepened an additional 7½ feet, it would not only increase business but allow the doors thereto to be closed while cars were being serviced, thereby creating a better appearance; that the two car garage could be used to store nonflammable supplies of the station; that lot 6 could be surfaced with asphalt, blacktop or other similar material; and that a wooden fence along the southern and eastern borders of lot 6 would eliminate glare and

reflection of lights to the adjoining properties as well as add to the aesthetic appearance.

The defendant established that the surrounding area was residential and introduced into evidence its ordinances relating to the expansion of nonconforming uses and off-street parking.

Based upon this evidence the trial court entered an order which found in essence that the Zoning Ordinance of the City of Rockford, Illinois, is unreasonable and void as applied to plaintiff's premises insofar as it prohibits the use of the westerly 84 feet of said premises for off-street parking in connection with plaintiff's adjoining gas station; that said Ordinance is unreasonable and void insofar as it prohibits plaintiff from using the existing 2-car frame garage located upon said premises for the storage of supplies and inventory to be used in plaintiff's adjoining gas station business; that said Ordinance is unreasonable and void insofar as it prohibits plaintiff from expanding its adjoining gas station building by rebuilding and relocating part of the station's east wall 7 ft. 6 in. to the east of its existing location; that plaintiff is legally entitled to: use said premises for off-street parking; use said existing 2-car frame garage for storage; rebuild and relocate the adjoining gas station's east wall; and install a new driveway to the station upon lot 6. The court further ordered that said parking area will be improved by the installation of asphalt, blacktop or similar surfacing and curbings along the easterly and southerly sides thereof; that plaintiff will install a wooden fence between 5 ft. and 6 ft. in height along the southerly and easterly sides of said parking area; that plaintiff will not place advertising signs or lights on said parking area; that in rebuilding and relocating the station's east wall, cement blocks will be utilized so as to present a similar appearance to the remainder

of the gas station; that no inflammables will be stored in the 2-car frame garage; that any lease or written agreement affecting said premises will include a covenant referring to the provisions and restrictions of a Declaratory Judgment entered by the Circuit Court of Winnebago County, Illinois, in Cause No. 78842; that this court will retain jurisdiction of the cause until the Declaratory Judgment has been complied with and for the purpose of entering such other orders that may hereafter be required.

The basic question on this appeal is whether the trial court was warranted in finding that the defendant's ordinance relating to nonconforming uses as applied to plaintiff's property, was invalid. Upon careful analysis of the evidence it can be seen that the plaintiff was not only desirous of adding more land (lot 6) to his already nonconforming premises, but desirous of expanding the original premises (lots 4 and 5) beyond the maximum allowed by ordinance.

■ Plaintiff has a property right in his present nonconforming use, and any ordinance which takes away that right in an unreasonable manner or in a manner not grounded on public welfare, is invalid. Douglas v. Village of Melrose Park, 389 Ill 98, 58 NE2d 864. See also, Western Theological Seminary v. City of Evanston, 325 Ill 511, 156 NE 778; Tews v. Woolhiser, 352 Ill 212, 185 NE 827; and Forbes v. Hubbard, 348 Ill 166, 180 NE 767.

■ ■ By the same token, there is a presumption of validity in favor of a zoning ordinance. The one assailing its validity has the burden of overcoming the presumption by proving with clear and convincing evidence that, as applied to him, it is arbitrary and unreasonable, and is without substantial relation to the public health, morals, safety and welfare. Bennett v. City of Chicago, 24 Ill2d 270, 181 NE2d 96. This same principle also applies to specific sections of a zoning

ordinance, for instance those concerning nonconforming uses. In the case of Mercer Lumber Co. v. Village of Glencoe, 390 Ill 138, 145, 60 NE2d 913, the court stated:

"The provision that appellant cannot increase the cubic capacity of its structures in excess of thirty per cent, under the authority granted by the statute, is reasonable, and in fact the language of the statute justifies restrictions against any extension of the nonconforming use."

At p 146, the court went on to say:

"In the present case the real contention of appellant, when analyzed, is not that it is suffering any loss at the present time, but that a restraint is created by the ordinance which may prevent it being used for a more profitable enterprise. This same objection could be made to almost any property in any zoned district."

■ The plaintiff argues that since lot 6, under its present classification, can be utilized for parking incident to other uses than a service station, it is unreasonable for the defendant to deprive the plaintiff of the same right in the furtherance of its service station business. However, the plaintiff is losing sight of the fact that its station is a nonconforming use and that to allow an extension of its business into lot 6 would be the expansion of the use beyond the maximum allowed under the defendant's ordinance. This is not a situation where the station is zoned for business and the plaintiff seeks to rezone the adjoining lot for parking purposes in conjunction with such business. The case at bar, simply stated, is one wherein the plaintiff seeks, beyond the maximum permitted, to expand a nonconforming use which the defendant has properly restricted by an appropriate ordinance.

A somewhat analogous situation is found in the case of Gore v. City of Carlinville, 9 Ill2d 296, 137 NE2d 368, wherein the appellants operated a filling station as a nonconforming use upon one-half of a lot which measured 100 ft. by 100 ft. The balance of the lot was landscaped. It was the appellant's intention to remove the old structure and erect a new and larger station that would utilize the entire lot. In a declaratory judgment action, the trial court ruled that the ordinance restricting the use of the premises relative to expansion was valid and denied relief. On appeal, the Supreme Court affirmed the lower court and stated, at p 300:

> "To support their contention that the ordinance here is an improper exercise of the police power appellants argue that there is 'no evidence that in any way indicates that the operation of the station has been detrimental to the citizens of Carlinville, nor is there any evidence which indicates that the future operation will affect in any way the public health, safety, morals, comfort or general welfare of any of the neighbors or citizens.' Such an argument overlooks the long established rule that where an ordinance is within the grant of power conferred by the legislature, the presumption is in favor of the validity of the ordinance, and that the burden is always on the party attacking its legality to show such invalidity. (City of Chicago v. Waters, 363 Ill 125; Stearns v. City of Chicago, 368 Ill 112; Poole v. City of Kankakee, 406 Ill 521.) The sole evidence held forth by appellants as supporting the claim that the ordinance does not promote the public health or safety is the testimony of Franklin L. Metzler, one or (sic) the intervening residence owners, to the effect that there have been no ill effects to the people from the operation of the station. As op-

posed to this, judicial notice may be taken of the fact that the business of storing and handling gasoline at filling stations within a city is attended with a peculiar degree of danger to life and property, (Fligelman v. City of Chicago, 348 Ill 294; People ex rel. Busching v. Ericsson, 263 Ill 368,) and that the noxious odors, noise and traffic emanating from the conduct of such a business are incompatible with a residence district. On the state of the record, therefore, it must be concluded that appellants have failed to maintain their burden of establishing the invalidity of the ordinance on the grounds advanced.

Drawing upon decisions dealing with zoning ordinances, appellants make the final contention that they have a right to a nonconforming use of their property, by reason of the fact its use for filling station purposes existed prior to the adoption of the ordinance. It is enough to point out that the zoning laws relied upon have been interpreted as justifying restrictions against any extension or expansion of a nonconforming use. (Mercer Lumber Co. v. Village of Glencoe, 390 Ill 138, pp 144, 145.) Section 4 of the ordinance here involved expressly restricts the enlargement or extension of existing structures. Yet, in the face of such restrictions and their manifest relationship to the public safety and welfare, appellants propose to build an entirely new and larger structure which will have the effect of increasing the volume of gasoline to be stored and transferred, and which will bring the operation into closer proximity with adjacent residences by utilizing the entire lot. The extension, enlargement and expansion of an existing nonconforming use to such a degree is clearly a violation of the terms of the ordinance. (See: Price v. Ackmann, 345 Ill App 1, Leave to Appeal

Denied 346 Ill App XV; Federal Electric Co. v. Zoning Board, 398 Ill 142; Mercer Lumber Co. v. Village of Glencoe, 390 Ill 138; 58 Am Jr, Zoning, sec 158; State ex rel. City Ice & Fuel Co. v. Stenger, 120 Ohio St 418, 166 NE 226.) While it is not to be denied that appellants possess a fundamental right to devote their property to whatever lawful use they choose, such right must give way to the considerations of public health and safety underlying the statutory authority upon which the city's ordinance is based."

Appellee's brief fails to answer directly the appellant's contention relative to the expansion of a nonconforming use. Instead, it has cited many cases concerning the law relative to a rezoning of property from one classification to another. None of the cases involve nonconforming uses, and are thus distinguishable from the case at bar.

During the conduct of the hearing, the appellant attempted to advise the trial court of its theory and defense, but for some reason the court misapprehended the differentiation between a regular change of zoning and an expansion of a nonconforming use.

The appellant has raised additional assignments of error on the part of the trial court. We do not feel it necessary to decide these points because, for the reasons stated, this cause must be reversed.

Reversed.

ABRAHAMSON, P. J. and DAVIS, J., concur.