The People of the State of Illinois, on Relation of The First National Bank of Lake Forest as Trustee Under the Trust Agreement Dated April 20, 1955, and Known as Trust No. 1208, Deerfield State Bank, and Joseph Greco, Petitioner-Appellant, v. The City of Highland Park, a Municipal Corporation, Defendant-Appellee.

Gen. No. 69–112.

Second District.

April 9, 1970.

Rehearing denied May 7, 1970.

117

Snyder, Clarke, Dalziel, Holmquist & Johnson, and Charles F. Scott, of Waukegan, for appellant.

Thomas H. Compere and Berle L. Schwartz, of Highland Park, for appellee.

MR. JUSTICE SEIDENFELD delivered the opinion of the court.

Petitioner seeks mandamus to compel the issuance of a permit by the City which would allow the removal of an existing house and portions of a greenhouse, and the construction of a new building, for the purpose of operating a "greenhouse, garden center, landscaping office and florist shop." A lawful continuance of a nonconforming use is claimed.

The City denied the permit, except for the request to wreck existing structures. The trial court upheld the action of the City.

The property is located within the City of Highland Park, with a frontage of approximately 167 feet on Deerfield Road, and with a depth of approximately 226 feet. It was annexed to the City in 1924 and was previ-

ously unzoned, in an unincorporated area. At the time
of the annexation, the Highland Park Zoning Ordinance
classified the property as Residence District and it has
remained zoned for single-family purposes.

The dispute centers on questions of whether a non-
conforming use has been established by the evidence,
and on whether the contemplated repairs, demolishment
and reconstruction would constitute expansion or en-
largement of such use prohibited under relevant ordi-
nances. In the alternative, an issue is raised by peti-
tioner's claim that the City has been estopped to deny
the issuance of the requested permit.

Robert S. Ramsey, testified for petitioner. He is the
President of the Deerfield State Bank, one of the relators,
which is the beneficial owner of the premises. He stated
that he was a longtime resident of the area and had
been familiar with the property in question since 1923.
He passed the property two or three times a year at
that time when he drove to Deerfield. He recalled a
greenhouse on the property in 1923, and a separate
"building used as an office." Some time after 1923, he
recalled that there was a new greenhouse built on the
property, and observed that one or two years after 1923
the greenhouse was used for growing potted flowers,
plants and cut flowers for sale. Items purchased were
paid for in the separate building wherein he observed
a cash register on a desk and a cot in the room. Prior
to 1926 the greenhouse was relocated in its present posi-
tion, and purchases on the premises were paid for in
the house-office. He observed no change in use after
1926. In the early 1960's he solicited a bank account from
the then owner, Ladd Stachel. A year or two later his
bank loaned money to a John Zender to acquire the prop-
erty. Both Stachel and Zender operated a "flower cart
sale of cut flowers on the property." He knew of im-
provements to the separate building in 1964, including

the installation of a "picture window." Also, "a kitchen was put in, some calking, and the north portion of the building was what I would call gutted." Zender died and the bank acquired title to the property and leased it to the relator, Joseph Greco.

Jens Peterson also testified for relators, claiming that he went on the property regularly to do business. He said that the original greenhouse and retail sale business of cut flowers was that of Fred Coleman (an adjoining owner) and not Frank Keleman (who was in the chain of title to the property), and he could not say whether it was outside the present premises or not. He testified that in 1926 "there was a new greenhouse built a little bit northeast of where this old one was that Fred Coleman had, but it was built by a different man." He said at another point that there were "two greenhouses" being put up on the subject property. He stated that the present house was not there prior to 1926.

Joseph Greco, one of the relators, testified that he began operation of a flower shop and garden center in 1965, selling potted plants, fertilizer and grass seed. He was in the landscaping business and had occasion to be on or by the property three or four days a week in 1952 or 1953. He testified to paying bills in the house and described a room with a cash register, a safe and office furniture, and said the building was used as a residence. He purchased potted plants at the premises between 1952 and 1964, although not in each year. These products were on sale about three months out of the year.

Greco further testified that while nothing was missing from the present foundation of the greenhouse, it needed replacement of glass; and heating and electrical work. A stucco building attached to the greenhouse needed complete renovation and he was using it only for storage. He described his proposed plans. He would remove the back portion of the greenhouse and renovate the existing

120

part. He would build a new building in the present location of the "stucco building" and use it as a garden shop building. The house would be torn down.

There was evidence of a series of building permits which had been issued by the City: June 16th, 1924, to Frank Keleman, to construct a "greenhouse building"; June 15th, 1925, to Keleman, to construct a "new greenhouse"; November 8th, 1927, to B. Nechville, for a "tool shed" (on a portion of the property not now a part of the premises in question); July 23rd, 1930, to Nechville, to construct an "addition to greenhouse"; August 24th, 1933, to Nechville, to construct a "porch addition"; April 4th, 1939, to Pasquale Bellei, to add an additional room "to cottage"; and on May 18th, 1964, to John Zender, for "remodeling of porch." (This application stated, "retail florist" in the use portion of the form.)

The zoning ordinance of Highland Park passed in 1947 and as amended, introduced by the City included,

> Article 14, headed "Non-Conforming Uses" and providing in material part:
>
> Section 14–2.
>
> The lawful use of a building existing at the time of the adoption of this Ordinance may be continued, subject to the provisions of this Ordinance, although such use does not conform with the provisions hereof. If no structural alterations are made, a non-conforming use of a building may be changed to another non-conforming use of the same or more restricted classification. . . .
>
> Section 14–5.
>
> . . . a non-conforming use of land only shall not be expanded beyond the extent of land actually devoted to and used by such non-conforming use at the time such use became non-conform-

121

ing. *The non-conforming use of a building or structure may not be increased beyond the area or space within such building actually devoted to such use at the date of the adoption hereof. . . . No non-conforming use may be expanded or enlarged by any addition to or alteration or remodeling of the same.* Nothing herein contained shall be construed to prohibit ordinary repairs thereto. (Emphasis added.)

(Section 14–7 provides for amortization of non-conforming uses and states in part:

(d) In the case of buildings erected since January 1, 1925, within forty (40) years from the date of the issuance of a building permit therefor, but in all cases on or before January 1, 1986.)

Section 4–9, under the heading of "Districts and Boundaries thereof" (which appellants urge is not applicable to non-conforming uses) provides:

Except as hereinafter provided:

(a) No building shall be erected, converted, enlarged, reconstructed or structurally altered, nor shall any building or land be used except for a purpose permitted in the district in which the building or land is located.

The judgment appealed from contains no findings of fact. It decrees that the issues are found in favor of the City of Highland Park and denies the petition for writ of mandamus.

■ The writ of mandamus will only be granted when the right to have a duty performed by a respondent is clear and unequivocal, People ex rel. Nat. Bank of

Austin v. Cook County, 56 Ill App2d 436, 448, 206 NE2d 441 (1965) ; People ex rel. Delgado v. Morris, 334 Ill App 557, 563, 79 NE2d 839 (1948).

██ ██ The City argues that petitioner has not sustained its required burden of proving that a nonconforming use predated the annexation of the premises to the City of Highland Park. A review of the testimony of the witness Ramsey and the inconclusive and somewhat confused testimony of the witness Peterson would tend to support that position. However, the fact that the City did issue building permits for two new greenhouses, which the evidence fairly shows were completed in 1926, shows a recognition of such nonconforming use, making it inequitable and unjust to permit the public body to retract what it previously had done. See New-Mark Builders, Inc. v. City of Aurora, 90 Ill App2d 98, 102, 233 NE2d 44 (1967).

We are of the opinion, nevertheless, that the judgment of the trial court was correct in denying the writ. The ordinances, particularly section 14–5, prohibit the increase of a nonconforming use "beyond the area or space within such building actually devoted to such use" (at the date of the adoption of the 1952 amendment) ; and further prohibit the expansion or enlargement of a nonconforming use "by any addition to or alteration or remodeling of the same" (excepting "ordinary repairs").

The proposed changes, of course, cannot be justified under the exception as ordinary repairs. They do, however, come within the prohibition of the extension of a nonconforming use beyond the area within the building actually devoted to the use and within the prohibition against expansion or enlargement of the use by additions, alterations or remodeling.

 The power to regulate nonconforming uses includes the power to limit alterations of the use, and there is no substance to the argument of petitioner that

123

the ordinance prohibits the more efficient and more profitable use of the premises as this contention might be applied to any property in any zoning district. Mercer Lumber Co. v. Village of Glencoe, 390 Ill 138, 146, 60 NE2d 913 (1945). Nor are we persuaded by petitioner's argument that the proposed commercial use occupies somewhat less space than the total of the house and greenhouse buildings now on the property, inasmuch as this computation requires the inclusion of the residence which essentially conforms to the single-family residential use classification under the Highland Park Zoning Ordinance. The removal and replacement of existing structures, the construction of an addition to the existing greenhouse, and the construction of a new building to house a garden shop seems clearly to constitute an unlawful expansion or enlargement of the nonconforming use within the City's ordinances.

Petitioner cites Federal Elec. Co. v. Zoning Board of Appeals of Village of Mount Prospect, 398 Ill 142, 75 NE2d 359 (1947), and People ex rel. Delgado v. Morris, supra, in support of its theory that the contemplated demolition, construction and remodeling do not constitute an improper expansion of the nonconforming use since there is no change in the type of use and no extension of the use beyond the premises or tract. We cannot reach the same conclusion from an analysis of these holdings. In Federal, the ordinance before the court merely prohibited expansion of a nonconforming use in general terms. The nonconforming use consisted of two steel towers for radio broadcasting, and the court held that the erection of large signs on the towers, advertising the owner, was not prohibited as the use was not thereby expanded. In Morris, an earlier and different ordinance of the City of Highland Park, which provided that a nonconforming use may be extended throughout the building or premises, was construed to

permit the owner to remodel within the bounds of the existing building devoted to multifamily nonconforming use, since there was no restriction on increasing the intensity of use within the terms of the ordinance.

The issuance of the original building permits, which we have alluded to as estopping the City from denying that a nonconforming use existed, affords no basis for petitioner's claim that the City is estopped from preventing an unlawful expansion. The continuation of an existing nonconforming use, subject to appropriate amortization provisions, is not synonymous with the razing and rebuilding proposed by the petitioner. See Boward v. The County of Cook, 27 Ill2d 52, 54–55, 187 NE2d 676 (1963).

Section 4–9 of the Highland Park Zoning Ordinance, supra, militates against the petitioner's proposed reconstruction of a building for use as a greenhouse in a residential area classification unless such reconstruction is protected and provided for in the nonconforming use provisions. As discussed above, the court finds no such protection for the proposed development in Article 14.

In view of our holding, we do not find it necessary to consider the effect of the amortization provisions of the ordinance.

Petitioner has failed to establish a clear right to the issuance of the writ of mandamus and we, therefore, affirm the holding of the trial court.

Affirmed.

DAVIS, P. J. and MORAN, J., concur.