PETER FURLONG, Plaintiff-Appellee, v. THE CITY OF CHICAGO *et al.*, Defendants-Appellants.

First District (3rd Division)   No. 84—356

Opinion filed March 31, 1986.

James D. Montgomery, Corporation Counsel, of Chicago (Jerome A. Siegan and Phillip L. Bronstein, Assistant Corporation Counsel, of counsel), for appellants.

Zulkey, Pikarski & Gordon, of Chicago (Richard E. Zulkey, of counsel), for appellee.

PRESIDING JUSTICE RIZZI delivered the opinion of the court:

Plaintiff, Peter Furlong, applied for a permit from the zoning administrator of the city of Chicago which would allow plaintiff to change the nonconforming use of a nonconforming building from a contractor's office to a tavern. Plaintiff claimed that he was entitled to a permit for his substituted nonconforming use pursuant to section 6.4—7 of the Chicago Zoning Ordinance (Municipal Code of Chicago, Zoning Ordinance, ch. 194A, sec. 6.4—7). The zoning administrator denied plaintiff's application, and the zoning board of appeals of the city of Chicago affirmed the administrator's decision. Plaintiff filed a complaint for administrative review in which he named as defendants the zoning board

of appeals and its individual members, the zoning administrator, the city of Chicago, and four people who had appeared at the hearing before the zoning board, including Alderman Gerald McLaughlin. The circuit court reversed the zoning board's decision. On appeal defendants argue (1) section 6.4—7 of the Chicago Zoning Ordinance does not compel issuance of the permit sought by plaintiff and (2) the zoning board and the city of Chicago have standing to bring this appeal. We reverse.

Among the stated purposes of the Chicago Zoning Ordinance are the promotion and protection of the public health, safety, morals, comfort, convenience and general welfare of the people, the prohibition of uses which are incompatible with the character of development or the permitted uses within zoning districts, and the gradual elimination of uses of buildings which do not conform to the standards of the district in which they are located and are adversely affecting the development and taxable value of property. (Municipal Code of Chicago, Zoning Ordinance, ch. 194A, secs. 2(1), (8), (14).) To this end, the zoning ordinance and its various amendments created zones and districts in the city of Chicago to restrict and regulate the construction, location and uses of buildings. As a result, several existing buildings and uses were not in compliance with the regulations applicable to the zones and districts in which they were located. To deal with this problem, the ordinance provides for time periods and amortization programs during which nonconforming uses and buildings are to be gradually eliminated. The ordinance also sets forth the circumstances under which nonconforming uses and buildings may continue to exist until the applicable termination date occurs. Municipal Code of Chicago, Zoning Ordinance, ch. 194A, art. 6.

Changes in the nonconforming use of a nonconforming building are governed by section 6.4—7 of the zoning ordinance. This section provides:

> "Change of Use in Non-Conforming Buildings. The non-conforming use of a building or structure, all or substantially all of which is designed or intended for a use not permitted in the district in which it is located, may be changed to a use permitted in the same district as the non-conforming use which presently occupies the building or structure or to a use permitted in a more restrictive district, but no such change shall extend or otherwise modify the provisions for elimination of such non-conforming building or structure and the use thereof as provided in subsection 6.4—8 hereof. For the purpose of this subsection only, the R1 District shall be considered the most restrictive and the M3 District the least restrictive district." (Municipal Code of Chi-

cago, Zoning Ordinance, ch. 194A, sec. 6.4—7.)
The parties agree that this section is applicable here. The uncontested facts show that the property involved is located in an area zoned R-3, general residence district; the building involved is a nonconforming building; the building has been consistently used by various contractors as an office, a use permitted in districts zoned C1-1, restricted commercial districts; and plaintiff's proposed use of the property as a tavern is a use permitted in districts zoned B4-1, restricted service districts, which are more restrictive districts than those zoned C1-1. Thus, section 6.4—7 is controlling.

However, while the parties are in accord regarding the underlying facts, they dispute the correct application of section 6.4—7 to those facts. Plaintiff argues that since the sole requirement of section 6.4—7 has been met, that is, the tavern is a permitted use in a district more restrictive than the one in which the current nonconforming use would be permitted, the ordinance compels the zoning board to grant plaintiff's application for change of nonconforming use. The zoning board, on the other hand, argues that the proposed change is merely permissible, not mandatory, because the zoning board has discretion to determine whether such a change should be allowed. We agree with the zoning board.

■ The justification for a zoning ordinance is founded upon exercise of the police power to secure the common welfare. (*Ford City Bank & Trust Co. v. County of Kane* (1983), 114 Ill. App. 3d 940, 948, 449 N.E.2d 577, 583.) Accordingly, even though the right to a nonconforming use is a property right, a governmental body may restrict a nonconforming use as may be necessary for the public health, comfort, safety or welfare. (114 Ill. App. 3d 940, 953, 449 N.E.2d 577, 586.) This power to regulate nonconforming uses includes the power to limit alterations of the use. (*People ex rel. First National Bank v. City of Highland Park* (1970), 122 Ill. App. 2d 117, 123, 257 N.E.2d 798, 802.) Therefore, the zoning board must be allowed to screen proposed changes in nonconforming uses to determine whether a proposed nonconforming use should be restricted or prohibited in order to protect the public.

In addition, section 6.4—7 expressly provides that the nonconforming use of a nonconforming building *may* be changed to a use permitted in the same district as the current nonconforming use or to a use permitted in a more restrictive district. The word "may" is defined in article 3 of the zoning ordinance as "permissive." In contrast, the word "shall" is defined as "mandatory and not discretionary." (Municipal Code of Chicago, Zoning Ordinance, ch. 194A, secs. 3.1 b, c.) Clearly, if

the drafters of the zoning ordinance had intended that changes in nonconforming uses coming within the ambit of section 6.4—7 must be allowed, then they would have utilized mandatory language.

■ The purpose of article 6 of the Chicago Zoning Ordinance is to govern nonconforming uses and nonconforming buildings and provide for their gradual elimination so that eventually the uniformity intended by the zoning scheme will be achieved. (*People ex rel. Wordell v. City of Chicago* (1978), 67 Ill. App. 3d 321, 325, 384 N.E.2d 894, 897; see Municipal Code of Chicago, Zoning Ordinance, ch. 194A, sec. 6.1.) In keeping with this purpose, section 6.4—7 permits one nonconforming use to be changed to another, but it limits such changes to nonconforming uses that would be permitted in the same district as the present nonconforming use or in a more restrictive district, thus striking a balance between the property rights of private parties and the general welfare of the public. Accordingly, when a change in nonconforming use is sought pursuant to section 6.4—7, the zoning board, consistent with its duties to administer the zoning ordinance (see Municipal Code of Chicago, Zoning Ordinance, ch. 194A, art. 11), has the authority to determine if the proposed use would unfairly infringe upon the health, safety or welfare of the public. We believe that in making this determination, the zoning board may look at the particular proposed nonconforming use, and not just its general classification. Such scrutiny is especially appropriate where, as here, the district is zoned for residential use.

For these reasons, we conclude that changes in nonconforming uses pursuant to section 6.4—7 are not mandatory but are subject to approval by the zoning board. The board may deny an application for change in nonconforming use if it determines that the proposed nonconforming use would be detrimental to the public health, safety or welfare. To the extent that *Orsolini v. Zoning Board of Appeals* (1978), 58 Ill. App. 3d 435, 374 N.E.2d 776, suggests that applications for changes in proposed nonconforming uses coming within the ambit of section 6.4—7 must be granted, we overrule that decision.

■ Since we have determined that changes in nonconforming use under section 6.4—7 are discretionary, not mandatory, we must next determine whether the zoning board's decision to deny plaintiff's application here was proper. Plaintiff argues that the zoning board's decision was erroneous because the board wrongly considered the increased intensity of the proposed use as a factor. We disagree. In its order, the zoning board found that the increase in the days and hours of operation, as well as the greater number of people that could be on the site, militated against allowing plaintiff to operate a' tavern.

Clearly, the intensity of use was an appropriate factor for the board to consider in deciding whether a tavern should be permitted in a residential district.

■ Plaintiff further argues that the testimony does not support the zoning board's findings regarding the greater intensity that would result from plaintiff's use of the property as a tavern. Plaintiff contends that the zoning board improperly considered statements made by neighbors and an alderman, none of who testified under oath. We agree with plaintiff that the neighbors and alderman should have been sworn as witnesses rather than being permitted to make comments. Nevertheless, it is clear that the zoning board's decision was based on the testimony of plaintiff and his witness, Richard Rozner, the current property owner. Plaintiff's testimony established that the tavern would operate seven days a week, from 9 a.m. to 2 a.m., and it could accommodate up to 100 patrons. Rozner's testimony provided the board with information regarding the operations of the prior contractors' businesses. The zoning board determined that compared to the businesses that had previously occupied the premises, the increased hours and days of operation of the tavern as well as the substantially larger number of people that would frequent the premises created a more intense use of the property which should not be permitted in this general residence district. We conclude that the zoning board's decision is supported by the evidence.

We next address plaintiff's argument that the zoning board and the city lack standing to prosecute this appeal. The parties agree that the other defendants lack standing. In support of his argument, plaintiff relies on *Speck v. Zoning Board of Appeals* (1982), 89 Ill. 2d 482, 433 N.E.2d 685. In *Speck,* the circuit court reversed the zoning board's order granting the applicants' application for a special use permit, and the zoning board appealed. The supreme court, reversing the appellate court, held that the zoning board did not have standing to appeal a reversal of its own decision. The court pointed out that the zoning board is "intended to function in an adjudicatory or quasi-judicial capacity," not as an advocate. (89 Ill. 2d 482, 485, 433 N.E.2d 685, 687.) In response to the zoning board's argument that its responsibility to protect the public interest authorized it to prosecute appeals, the court stated that "the Board's obligation to the public is fully discharged when it conducts a hearing and, with due consideration to the public interest, determines the propriety of granting or denying a variation. *** Its responsibility to protect the public interest does not authorize the Board to act as a representative of the public for the purpose of vindicating its own decision on appeal." (89 Ill. 2d 482, 486, 433 N.E.2d

685, 687.) We believe that, in regard to the zoning board, *Speck* is distinguishable from the present case as to that portion of the appeal relating to the correct interpretation of section 6.4—7. Also, *Speck* does not address the issue of the city's standing.

■ We first consider the standing of the zoning board. To the extent that the zoning board seeks an appeal to vindicate its decision as to the propriety of granting plaintiff's application, we agree with plaintiff that the zoning board lacks standing under *Speck.* However, we believe that the zoning board does have standing to the extent that it is protecting its right and duty to interpret the zoning ordinance.

In *People ex rel. Interchemical Corp. v. City of Chicago* (1963), 29 Ill. 2d 446, 194 N.E.2d 199, the supreme court recognized that "the [zoning] board of appeals necessarily [has] the power to construe the applicable provisions of the zoning ordinance in order to determine whether a proposed use conforms to the ordinance." (29 Ill. 2d 446, 450, 194 N.E.2d 199, 201.) We believe that concomitant with this power, the zoning board must have standing to appeal an adverse interpretation of a zoning provision. Here, the circuit court reversed the zoning board's interpretation of section 6.4—7 as a permissive, not mandatory, provision. Clearly, the board's hearing to decide whether or not to grant plaintiff's application was not adequate to protect the board's interest in its interpretation of the ordinance. The *Speck* decision simply is not applicable to the circumstances here.

■ Moreover, to the extent that the zoning board did not have standing to appeal, its lack of standing did not preclude an appeal here because the city of Chicago does have standing. Plaintiff's argument that the city lacks standing because it is merely a nominal defendant is untenable. The city has an interest in the correct interpretation and implementation of its zoning ordinance. Also, plaintiff elected to name the city as a defendant, and plaintiff was benefited by the city's status as a party in that the circuit court enjoined the city from interfering with plaintiff's use of the premises as a tavern and ordered the city to grant any licenses or permits plaintiff might need to operate the tavern, as long as plaintiff's applications substantially complied with the relevant municipal ordinances. Under the circumstances, plaintiff may not now contend that the city lacks standing.

Accordingly, the order of the circuit court is reversed.

Reversed.

McGILLICUDDY and WHITE, JJ., concur.