634

Union National Bank of Chicago, as Trustee under Trust No. 1098, Plaintiff-Appellee, v. Village of Oak Lawn, Defendant—(William Prendergast et al., Appellants.)

(No. 55616;

First District—July 2, 1971.

*Rehearing denied August 4, 1971.*

Pederson & Houpt, of Chicago, (Richard V. Houpt, James K. Stucko, and Herbert J. Linn, of counsel,) for appellants.

Haskins, Maguire & Haskins, of Chicago, (Robert E. Haskins and C. W. Eckert, of counsel,) for appellee.

Mr. JUSTICE DRUCKER delivered the opinion of the court:

Plaintiff brought a declaratory judgment action which sought a declaration that the zoning ordinance of the Village of Oak Lawn (hereinafter "Village") was void insofar as it classified the subject property R-1, Single-Family Residential District. Plaintiff asked that it be permitted to use the subject property under an R-3, Multi-Family Residence District classification. The trial court entered judgment for plaintiff finding that the Village's R-1 zoning ordinance as applied to the subject property was void insofar as the ordinance prohibited plaintiff from developing a series of thirteen multi-family apartment buildings containing 190 dwelling units.

The Village did not appeal from the judgment order of the trial court. This appeal is brought by certain homeowners (hereafter "Appellants") whose property lies directly across the street, to the west, of the sub-

ject property and whose interest in this cause appears throughout the record.

The subject property, presently zoned R-1, Single-Family Residence, consists of approximately 4.6 acres located on the east side of South Komensky Avenue and extending from 100th Street on the north to a point approximately 135 feet north of 103rd Street on the south in the Village of Oak Lawn. The property has a total frontage of about 1643 feet and an average depth of 124 feet, 10 feet of which includes the west half of a 20 foot vacated alley. The property along the eastern boundary of the subject property, fronting on the west of Crawford Avenue (a multi-lane heavily travelled thoroughfare), is zoned R-3 and is fully developed with multiple-family residences with the exception of four lots on the southwest corner of 100th and Crawford and six lots on the northwest corner of 103rd and Crawford. The area zoned R-3 from 100th to 102nd was based upon a declaratory judgment decree entered in 1961 which permitted this area fronting on Crawford to be developed for multiple-family residences.

On the east side of Crawford from 99th to 103rd in the City of Chicago is Brother Rice High School and other uses of a quasi-public nature. This area is zoned R-4, Public and Quasi-Public.

Immediately west of the subject property, on the west side of Komensky Avenue, from 100th to 103rd, is an area zoned R-1 and developed for single-family use. This R-1 zone extends approximately one mile west from the subject property to Cicero Avenue.

The area north of the subject property is also zoned R-1 from 100th to 99th and extends west to about Cicero Avenue. North of 99th is a Planned R-2 and/or R-3 zone.

South of the subject property, on the northwest corner of 103rd and Komensky, there is an R-3 multiple-family development. There is also R-3 zoning in an area bounded by 103rd on the north, Crawford on the east and Komensky on the west. This R-3 zone extends to 383 feet south of 103rd. A food mart, zoned C-2, General Service District, comprises the remainder of the block south to 104th.

Multiple dwellings zoned R-3 were built on the west side of Komensky running south from 103rd to a public walkway at 104th. These apartments front on Komensky and the rear yards of these buildings have a common lot-line with the rear yards of single-family homes fronting on Karlov Avenue. These single-family homes are located in an R-1 zone which extends north, south and west.

A B4-1, Residential Service District, begins at the southeast corner of 103rd and Crawford and extends east on 103rd to Springfield Avenue and south on Crawford to 104th.

The beneficial owner of the subject property is William Ryan, a building contractor, who bought the property for $410,000 in 1968 with knowledge of the existing R-1 zoning. He acquired the property with the intention of developing it for multiple-family residences. He proposes to build 190 units on the property which would not comply with R-1 zoning but would comply with the density requirements of an R-3 classification. He has made no effort to sell the property for single-family residences. He appeared before the appropriate body of the Village seeking a change in zoning from R-1 to R-3, which was denied. This change was also denied by the Village Board of Trustees.

Four homeowners of single-family residences within the two and three-quarter block area fronting on Komensky, directly west of the subject property, and each an appellant herein, testified that they were aware of the single-family zoning of the subject property at the time they purchased their homes and relied upon this R-1 zoning before making their purchase. In their opinion the construction of a multiple apartment building development consisting of one 22 unit building, eight 15 unit buildings and four 12 unit buildings would interfere with the use and enjoyment of their own property and would reduce the value of their homes.
*Testimony of John McNamara,* for the plaintiff:

He is a real estate broker and appraiser and has been in the real estate business for 44 years. In his opinion the subject property as zoned R-1 was valued at $350,000. If an R-3 classification were allowed the value of the land for multiple-family use would be $665,000. This figure is based upon 190 units worth $3,500 per unit.

In his opinion the value of the homes on the west side of Komensky from 100th to 103rd is $35,000 to $45,000 for each home.
*Testimony of Richard McKennon,* for the plaintiff:

He is a city planner and is familiar with the subject property. In his opinion the highest and best use of the subject property is for multiple-family dwellings. In reaching this conclusion he relied upon the existing land uses between 100th and 103rd and Crawford and Komensky. In his opinion the proper zoning for the western portion of these blocks (subtect property) should be equivalent or similar to the zoning of the eastern portion, R-3.

He also relied upon the R-3 zone extending south from 103rd, between Crawford and Komensky, as well as the multiple-family zoning beginning at 103rd on the west side of Komensky extending south to 104th. This R-3 zone encompassed only the eastern portion of the block between Komensky and Karlov; the western portion of the block is zoned R-1 and developed with single-family homes.

He believes that the proper zoning district boundary line for the sub-

ject property should be Komensky Avenue, rather than the vacated alley to the east of the subject property; that lot-lines should never be used for zoning district boundary lines unless there is no other choice and that an alley, street or other natural barrier should be the boundary line.

There are multiple-family dwellings south of 103rd on the west side of Komensky which look into the back yards of single-family homes fronting on the east side of Karlov. However, in his opinion this is not proper zoning. These single-family homes are comparatively new, and they are substantial homes.

*Testimony of Warren Schlieske,* for the defendant:

He is in the real estate and appraisal business in Oak Lawn. He is familiar with the subject property. Twenty-eight single-family homes could be built on the subject property. In his opinion the highest and best use of the subject property is a continuation of the R-1 classification. He considered the surrounding single-family uses before arriving at his opinion. As zoned R-1 the value of the subject property is $408,375. If zoned R-3 the property would be worth $418,000.

The subject property is comparable to the property on the east side of Karlov south of 103rd. The single-family homes built on Karlov are worth about $45,000 and their back yards abut multiple dwellings fronting on Komensky. Apartment buildings have been permitted as a buffer system between a commercial use or highways and single-family areas within the Village. At 103rd and Kenton apartments were used as a buffer zone between single-family residences and the commercial use of a car agency.

In his opinion the development of the subject property as proposed by plaintiff would have a very depreciating deleterious effect on the value of property on the west side of Komensky from 100th to 103rd.

*Testimony of E. Carl Faitz,* for the defendant:

He is Director of Building and Zoning for the Village. He is familiar with the subject property. The property is suitable for single-family use. The multiple-family residences built on the west side of Komensky south of 103rd were built in 1964 and 1965. The ten single-family homes which abut these multiple dwellings were built in 1967 and 1968 and sold for $45,000 to $50,000. There are other examples throughout the Village where single-family homes have been built backing up to multiple-family developments. There is a demand for single-family homes within the Village. He based this statement on the recent building and sales of single-family homes within the Village.

The area from 100th south to 102nd which is now improved with multiple-family dwellings fronting on Crawford and extending to a depth of 124 feet, which includes ten feet of vacant alley, was the result

of a declaratory judgment court decree brought against the Village. The court's decree was entered allowing multiples to be developed in this area prior to the time the Village's Comprehensive Zoning Plan become effective in 1963. The Village zoned this property R-3 based upon this court order.

*Testimony of James J. Curtis, Jr.,* for the defendant:

He is a real estate appraiser and is familiar with the subject property. The single-family homes immediately west of the subject property on Komensky have a value of $32,000 to $45,000. In his opinion the highest and best use of the subject property is for single-family development. He based his opinion on the surrounding uses, the value of the properties on the west side of Komensky, the people in the area, the schools, transportation, public facilities and the single-family homes built on Karlov south of 103rd which already abut multiple-family residences. The homes on Karlov are slightly higher priced than those which are across from the subject property.

In his opinion the fair cash market value of the subject property under R-1 is $412,500. If the subject property is developed for the purpose sought by plaintiff the value would be $500,000. If the subject property is developed as multiple-family, the properties across the street would suffer adversely because of the increased density. The loss in value for each home would vary depending upon the market conditions. The loss could be $3,000 per home.

If single-family homes were built on the subject property they would sell for $40,000. There is a good market demand for single-family homes in the Village. There is also a shortage of apartments within the Village.

The planned R-2 and/or R-3 development north of 99th is approximately 70% vacant.

*Testimony of William S. Lawrence,* for the defendant:

He is a city planning and zoning consultant and he is familiar with the subject property. In his opinion the highest and best use for the property is single-family development under R-1. He based his opinion upon the fact that the entire frontage of the subject property faced into single-family homes of recent development and excellent quality on the west side of Komensky; that like uses should face each other; that there should be no further intrusion into the R-1 zoning district boundaries; and that the height of the proposed development would be considerably different from the single-family residences across the street.

The multiple-family development on Crawford from 100th to 103rd would not have an adverse effect upon the subject property for use as single-family homes. These homes would back up to the apartments but the primary face and character of these homes would be the single-family

residences on the west side of Komensky. Similar uses would be facing each other. In his opinion the proposed R-3 use of the subject property would introduce a use of dissimilar character into the area whereby multiple dwellings would face low density homes, height characteristics would vary and additional traffic would be generated.

Neither the multiple-family development on both sides of Komensky south of 103rd, nor the multiple-family development on the northwest corner of 103rd and Komensky would have an effect upon the subject property as zoned R-1.

*Opinion*

Appellants contend that the R-3 multiple use sought by plaintiff is incompatible with the surrounding uses and that the invalidation of the Village's R-1 zoning classification as applied to the subject property is not supported by the manifest weight of the evidence.

Plaintiff argues, however, that the R-1 classification as it applies to its property is arbitrary and unreasonable. Plaintiff first claims that the R-1 zoning cannot be justified based upon the surrounding zoning and uses. It points out (1) that while the property west of Komensky is zoned and developed R-1, to the north of the subject property there is R-1 single-family development for only one block and then north of this there is a Planned R-2 and/or R-3 area; (2) that south of the subject property the area is zoned and developed R-3; (3) that south of 103rd on Crawford there is a mixture of multiple-family dwellings and business uses; and (4) that most importantly the eastern half of the blocks in which the subject property is located is zoned R-3 and developed for multiple-family residences, while just east of Crawford, in Chicago, is an area zoned R-4, General Residence District.

Appellants argue that the Village's evidence proffered at trial shows that single-family development is the dominant zoning and use characteristic west of the subject property for approximately one mile to Cicero Avenue; southwest of the subject property to 107th and Kilpatrick; northwest of the subject property to 95th and Cicero, except for two areas zoned for public parks; and north of the subject property from 100th to 99th.

Although the properties in the eastern half of the blocks from 100th to 103rd and fronting on Crawford are zoned and developed R-3, these multiple dwellings face Crawford, a heavily travelled north-south artery, and part of this R-3 zone, from 100th to 102nd, was based upon a court declaratory judgment order entered October 31, 1961. The Village had opposed that declaratory judgment action. However, the trial court voided the Village's ordinance as applied to that property and allowed the development of multiple-family dwellings. Based upon that court

decree the Village zoned the eastern half of these blocks R-3 when it filed its Comprehensive Zoning Plan in 1963.

Further, the subject property has always been zoned for single-family use since the 1963 Plan, and there was testimony that the property owners across the street from the subject property relied upon this R-1 zoning when they bought their property.

Plaintiff also claims that the R-1 ordinance is arbitrary and unreasonable because while "there can be no doubt that it [the subject property] *is suitable for single-family development * * * in the larger sense* of desirability, it is not suitable because there is no separation between the two classifications [R1 and R3] except the rear lot line." However, as herein noted, a declaratory judgment action and subsequent court decree effectively determined that multiple dwellings could be developed from 100th to 102nd facing Crawford and extending back a depth of 125 feet in a westerly direction, which includes that area of a vacated alley abutting the property on the westerly boundary. Once the declaratory judgment order was entered the Village recognized the fact that multiple dwellings would be built and it zoned the property R-3 so that it would conform to the Village's Comprehensive Plan.

Furthermore, there was testimony that lot-lines have been used as zone separations throughout the Village. Such a relationship exists south of 103rd in an area bounded by Komensky and Karlov where single-family homes of greater value than those immediately opposite the subject property were built and sold after apartment buildings which abut these homes were built; and as testified to by the Village's witnesses, the lot-line zoning separation has not had a negative effect on these single-family residences.

Appellants contend that the invalidation of the R-1 zoning classification as applied to the subject property is not supported by the manifest weight of the evidence. They argue that the testimony offered at trial by the Village "was at least equal, if not substantially more impressive than that adduced by plaintiff," and therefore the presumptive validity of the Village's zoning regulation must be upheld. Plaintiff, however, argues that the judgment of the trial court is supported by the greater weight of the evidence and the conflicting testimony proffered at trial made the validity of the Village's zoning restriction debatable for the trial court's determination.

In *Midwest Bank and Trust Co. v. City of Chicago, ante* at p. 518, the City argues that the invalidation of its zoning classification, as applied to the subject property, was not supported by the manifest weight of the evidence. In reversing the trial court's finding this court stated:

"The rule to be applied in examining the evidence in a zoning

case recognizes a presumption in favor of the validity of the legislative enactment, and the party attacking it has the burden of overcoming that presumption by clear and convincing evidence. To meet this burden, the property owner's proof must establish more than the reasonableness of alternative zoning classifications; it must establish that the legislative classification is arbitrary, unreasonable, and without substantial relation to the public health, safety, morals or general welfare. (*Chicago & N.W. Ry. Co. v. City of DesPlaines*, 97 Ill.App.2d 201, 206; *Mutz v. Village of Villa Park*, 83 Ill.App.2d 1, 10-11; *Tuite v. City of Loves Park*, 82 Ill. App.2d 214, 218.) Where, as in the instant case, expert witnesses express conflicting opinions as to the reasonableness of a zoning ordinance in its application to a particular piece of property, the court must, from all of the facts, determine whether there is justification for legitimate differences of opinion. (*Fiore v. City of Highland Park*, 76 Ill.App.2d 62, 72.) And if the court is persuaded by the evidence that the question involved is fairly debatable and the opinions on both sides are reasonable, the answer is not to be supplied by the court, as it must then defer to the legislative judgment of the municipality. *La Salle National Bank v. City of Chicago*, 6 Ill.2d 22, 31."

■■ In the instant case we find that the plaintiff failed to overcome the presumptive validity of the Village's zoning ordinance and that the present R-1, Single-Family District ordinance must prevail. See *Duryea v. City of Rolling Meadows*, 119 Ill.App.2d 445.

■■ Plaintiff also argues that its property would have a greater value if its proposed use was allowed. While the value of the subject property is a factor to be considered in determining the reasonableness of the Village's zoning ordinance, it is not of itself sufficient to invalidate the present single-family ordinance. *River Forest State Bank & Trust Co. v. Village of Maywood*, 23 Ill.2d 560; *Jacobson v. City of Evanston*, 10 Ill.2d 61; and *Duryea v. City of Rolling Meadows, supra*.

The judgment is reversed.

Judgment reversed.

ENGLISH, P. J., and LORENZ, J., concur.