AMERICAN NATIONAL BANK AND TRUST COMPANY OF CHICAGO, Trustee, *et`al.*, Plaintiffs-Appellees, *v.* THE VILLAGE OF OAK LAWN, Defendant-Appellant.

First District (4th Division)   No. 78-560

Opinion filed September 6, 1979.—Rehearing denied March 19, 1980.

Klein, Thorpe & Jenkins, Ltd., of Chicago (Arthur C. Thorpe, of counsel), for appellant.

Jack M. Siegel, of Chicago, for appellees.

Mr. JUSTICE LINN delivered the opinion of the court:

Plaintiffs, Edward J. and Joan A. McNamara, who are the beneficial owners of land held in trust by plaintiff, American National Bank & Trust Company of Chicago, applied to the Village of Oak Lawn (village) for rezoning of the subject property from an R-1, single-family, to an R-3, multifamily, zoning classification. The village denied their request for rezoning and plaintiffs filed an action in the circuit court of Cook County seeking to have the existing zoning classification declared invalid and unconstitutional as applied to their property. The circuit court held in favor of plaintiffs. The defendant village appeals.

We reverse the judgment of the circuit court of Cook County.

The property consists of two vacant parcels of land bisected by 106th Place and located on the west side of Kilpatrick Avenue, between 106th and 107th Streets, in the Village of Oak Lawn.* It is zoned R-1 which permits single-family dwellings, parks and playgrounds, public schools, churches, libraries, convents and monasteries.

Immediately north of the property, across 106th Street on the west side of Kilpatrick Avenue, is a residential home owned by the Granatas. The Granata home is the only improved lot in an area zoned single-family on the west side of Kilpatrick Avenue, north of 107th Street to 105th Street. This area includes the subject property. Immediately east of the property, across Kilpatrick Avenue and north of 107th Street, is an area zoned single-family, improved with single-family residences.

The blocks on which plaintiffs' parcels are located contain three zoning classifications. The plaintiffs' property is separated from a commercial C-2 zone on the west side of the block facing Cicero Avenue by an area zoned R-3, multifamily. A supermarket, gas station and the

---

* See attached map.

R1

106th Street

R3

106th Place

107th Street

C2

High
School

R3

R1

SUBJECT PROPERTY

Cicero Ave.

Keating Ave.

Kilpatrick Ave.

Granata funeral home are established in the commercial zone facing Cicero Avenue. The property zoned R-3 abuts the subject property and is improved with multiple-unit apartment buildings.

Southwest of the subject property, across 107th Street, the property is zoned R-3 and is improved with multiple-unit buildings. 107th Street is designated a village collector street and traffic on Kilpatrick Avenue stops where it intersects 107th Street. The Harrold L. Richards High School is located on the east side of Kilpatrick Avenue, south of 107th Street.

Although the village adopted a comprehensive amendment to its zoning ordinance in 1975, the subject property has been zoned R-1 continuously since 1964. Plaintiffs purchased the subject parcels in 1968 and 1972 with knowledge that the property was zoned for single-family use.

Plaintiff Edward J. McNamara testified that he proposed to construct two three-story, 11-unit condominium buildings on the parcel north of 106th Place. South of 106th Place he proposed to develop two three-story, nine-unit condominium buildings. The brick, two-bedroom units would be similar to buildings he had previously constructed immediately west and south of the subject property. McNamara had also built a multifamily condominium north of the subject property between the Granata home and the Granata funeral parlor on land purchased from the Granatas. The witness had obtained rezoning in the area within the preceding five years to develop multifamily structures.

McNamara testified that under the present zoning he thought eight single-family residences could be built on the property, compared to the forty condominium units he proposed. Approximately 60 people would occupy the proposed condominium while the single-family residences would accommodate about 30 people. He felt that the condominium development would not significantly increase the number of cars in the area. At the rear of the buildings he proposed to provide one parking space for each unit.

Plaintiffs' architect described the proposed buildings and site plans. The witness testified that the proposed construction would be in compliance with the village's R-3 zoning classification. The buildings would face north and south so that the sides of the buildings would face the front of the single-family residences on the west side of Kilpatrick Avenue. The parking areas were planned for entrance from Kilpatrick Avenue, but, in the trial court, plaintiff agreed to revise his proposal to provide ingress and egress from the east-west streets. The architect considered the proposed structures to be architecturally compatible with the existing uses in the area. In his opinion, the subject property is not suitable for single-family residences because the multifamily buildings directly to the west are separated from the subject property by only a lot

line. If single-family residences were built on the subject premises, they could back up to the multifamily buildings, but he considered the street a better buffer than a rear yard.

Plaintiffs' experts agreed that the proposed condominium development was the highest and best use of the subject property based on the location of the property, the need for a variety of housing types, the location of Cicero Avenue one block west, the physical characteristics of the site and the character of the area.

Plaintiffs' real estate expert testified that the value of the property, if used in the proposed manner, would be $240,000. If developed as single-family home sites, he estimated the value of the property to be about $140,000. The witness stated that there was a good market for both single-family and condominium residences in the area. He estimated the value of the existing single-family homes on the west side of Kilpatrick Avenue to be between $45,000 and $70,000. However, in his opinion, if single-family homes were built on the subject property they would encounter market resistance because of the adjoining multi-family developments. He did not favor building single-family homes with side yards abutting multifamily, but conceded that the subject property could be developed with single-family homes facing onto Kilpatrick Avenue and backing up to the existing multifamily developments.

Plaintiffs' planning and zoning expert testified that Kilpatrick Avenue provided a more appropriate transition of uses than the placing of single-family and multifamily uses side-by-side. However, he admitted that backing up single-family to multifamily is an accepted zoning practice. He stated that areas south of the subject property had been successfully developed with single-family across the street from multifamily. He believed the single-family zoning north of the subject property could be sustained if the requested rezoning was allowed. In the opinion of the planning and zoning expert, the subject property took its character from predominant multifamily and commercial uses in the area, and it could not be suitably developed as single-family because the adjacent multifamily buildings would overshadow the lower single-family structures. A tax impact study prepared by the witness indicated that the multifamily development would have a beneficial financial impact on the school districts in the area.

Testifying for the village, its director of building and zoning stated that deviations from the plan shown on the 1964 zoning map included the rezoning of the area across from the high school, south of 107th Street on the west side of Kilpatrick Avenue, from single-family to multifamily. The area west of the subject property, between 106th and 107th Streets, had been rezoned from commercial to multifamily and provided a buffer zone between the commercial uses on Cicero Avenue and the residential

property on Kilpatrick Avenue. The subject property retained its single-family zoning so that single-family uses would face each other; however, since 1964, only the Granata home had been built on the west side of Kilpatrick Avenue, between 107th and 105th Streets.

The witness stated that there are instances in the village where multifamily zoning is located across an interior street from single-family zoning. He stated that the proposed condominium would generate more traffic in the area, although the high school already produces considerable traffic; would require about 80 parking spaces and would conceivably increase on-street parking.

The village's expert witnesses testified that the highest and best use of the property is for single-family residences, as presently zoned. This determination takes into account the compatibility of the proposed use with the present surroundings. A real estate appraiser testifying on behalf of the village stated that he estimated the value of the property as presently zoned to be about $179,000 and if rezoned multifamily to be $220,000. He conceded that the property could be adapted for condominium use and that the most profitable use of the property would be multifamily development. However, he was of the opinion that multifamily construction would have a negative impact on the salability of the existing single-family residences located on the east side of Kilpatrick Avenue. The witness stated that the property could feasibly be developed as $80,000 to $90,000 single-family homes, facing the homes on the east side of Kilpatrick Avenue and backing up to the existing multifamily apartment buildings. These estimated prices were slightly higher than the appraised value of existing single-family homes in the area. It was his opinion that the proposed development would have a greater negative impact on the property across the street than the existing apartment buildings would have on single-family homes built on the subject property because potential purchasers would be aware of the existing uses.

A planning and zoning consultant stated that the village zoning scheme employs the accepted practice of zoning multifamily uses as a transition between commercial and single-family uses, and places like uses across from each other. With reference to the immediate area, the witness stated there was a pattern north of 107th Street to place like uses facing one another. South of 107th, multifamily had been developed primarily because of the proximity of the high school. He recommended building single-family homes facing Kilpatrick Avenue on the subject property. He concluded that the proposed use would not be detrimental to the existing multifamily to the west and south but would be incompatible with and tower over the single-family homes across the street.

Two homeowners on the east side of Kilpatrick Avenue facing the subject property objected to the rezoning, stating that they relied on the existing zoning when determining whether to face their homes onto Kilpatrick Avenue or the east-west streets. Mrs. Granata also testified that she relied on the single-family zoning classification on the west side of Kilpatrick Avenue when she constructed her home in 1969. She sold plaintiffs a piece of property which is separated from her home by an extra lot.

After hearing this evidence, the trial court found that the plaintiffs had overcome the presumption of validity attaching to the zoning ordinance and held that plaintiffs were entitled to construct the proposed condominium buildings with the restriction that there could be no ingress and egress to the development from Kilpatrick Avenue.

OPINION

■■ Because zoning is mainly a legislative function, a zoning ordinance is accorded the presumption of validity and should be upheld if it bears any relationship to the public health, safety or welfare. The party attacking the validity of the ordinance has the heavy burden of establishing by clear and convincing evidence that the ordinance, as applied to his property, is arbitrary and unreasonable and bears no substantial relationship to the public health, safety and welfare. (*Tomasek v. City of Des Plaines* (1976), 64 Ill. 2d 172, 354 N.E.2d 899; *Duggan v. County of Cook* (1975), 60 Ill. 2d 107, 324 N.E.2d 406.) The validity of the ordinance is measured by an analysis of the particular facts of the case under the considerations set forth in *La Salle National Bank v. County of Cook* (1957), 12 Ill. 2d 40, 145 N.E.2d 65. These are: (1) the existing uses and zoning of nearby property; (2) the extent to which property values are diminished by the particular zoning restrictions; (3) the extent to which the destruction of property values of plaintiff promotes the health, safety, morals or general welfare of the public; (4) the relative gain to the public as compared to the hardship imposed upon the individual property owner; (5) the suitability of the subject property for the zoned purposes; and (6) the length of time the property has been vacant as zoned considered in the context of land development in the area in the vicinity of the subject property. (12 Ill. 2d 40, 46-47, 145 N.E.2d 65, 69.) No one consideration is controlling.

The first factor to be considered, and of primary importance in this case, is the relationship of the subject property to the existing uses and zoning of the surrounding area. To the south and west the property is zoned for and improved with multifamily uses. However, the multifamily uses south of the subject property on Kilpatrick Avenue are across the street from the high school where the property was rezoned from single-family to multifamily with knowledge that the high school would be built

on the property owned by the school district. West of the subject property, a rezoning from commercial to multifamily allowed the construction of the apartment buildings which abut the subject property. This R-3 zoning serves as a buffer between the commercial property on Cicero Avenue and the single-family residences on Kilpatrick Avenue.

Extensive single-family development lies east of the subject property on Kilpatrick Avenue. The residents of those single-family homes who testified stated that they relied on the R-1 zoning of the subject property when electing to face their homes onto Kilpatrick Avenue. The area immediately north of the subject property on the west side of Kilpatrick Avenue is zoned R-1 but is not substantially improved except for the Granata home. The Granata home has been the only construction on the west side of Kilpatrick Avenue, north of the subject property to 105th Street, since 1964. North of 105th Street, the west side of Kilpatrick Avenue is improved with single-family homes. It is appropriate to observe that if the requested rezoning is permitted it will prejudice any potential for additional single-family development on the west side of Kilpatrick Avenue.

■■ Plaintiffs assert that the subject property takes its character from the commercial and multifamily uses to the south and west. It is unavoidable that zoning must begin and end somewhere, and that two different zoning classifications attach to adjoining properties which are separated only by their respective lot lines does not make a more restrictive classification unreasonable. (See *Lapkus Builders, Inc. v. City of Chicago* (1964), 30 Ill. 2d 304, 196 N.E.2d 682; *Avenue State Bank v. Village of Oak Park* (1968), 99 Ill. App. 2d 329, 241 N.E.2d 630.) In this case, plaintiffs' property, although separated from the neighboring R-3 zone by only a lot line, serves as the western boundary of a single-family area. It is planned to allow similar uses to face each other, an admittedly accepted zoning practice. The property has maintained its R-1 zoning for many years and there is evidence that the property owners across the street relied on the R-1 zoning when they bought and built upon their property. In contrast, the rezoning to multifamily south of the subject property is easily understood in light of the existence of the high school and the attendant noise and traffic it generates.

A similar zoning configuration in the village was upheld in *Union National Bank v. Village of Oak Lawn* (1971), 133 Ill. App. 2d 634, 273 N.E.2d 461. Without elaborating on the facts of that case, it is sufficient that the court considered and rejected as a basis for invalidating the R-1 zoning ordinance as applied in that instance, that the subject property was divided from adjacent multifamily property by only a lot line. As in this case, the evidence showed that it was possible, although less profitable, to develop the property for single-family use.

■■ It is conceded that the property could be more profitably developed as multifamily units. While the diminution in value resulting under the existing zoning is one factor to consider (*La Salle National Bank v. County of Cook* (1957), 12 Ill. 2d 40, 145 N.E.2d 65), it is an issue common to nearly every zoning case (*First National Bank v. County of Lake* (1955), 7 Ill. 2d 213, 130 N.E.2d 267), and is not alone a sufficient reason to invalidate a more restrictive zoning classification than the one proposed (*Elmhurst National Bank v. City of Chicago* (1961), 22 Ill. 2d 396, 176 N.E.2d 771). This is particularly true where plaintiffs purchased the property with full knowledge of the zoning restrictions. (*Grobman v. City of Des Plaines* (1975), 59 Ill. 2d 588, 322 N.E.2d 443.) Even more convincing is the fact that plaintiffs have built several multifamily developments in the surrounding area and are responsible for obtaining the adjacent R-3 zoning which they now suggest renders invalid the present zoning of the subject property. Plaintiffs have not shown that any attempt has been made by them to develop the property as single-family in compliance with the existing R-1 zoning classification, although even plaintiffs' experts admitted it is feasible.

■■ We also consider whether the extent to which the present zoning promotes the public health, safety and welfare outweighs the private hardship imposed on plaintiffs. The village presented some evidence that the multifamily buildings proposed by plaintiffs would generate additional traffic in the area. We are not persuaded that this alone presents a justification for retaining the single-family zoning since there is already substantial traffic in the area created by the high school. However, it is unreasonable to believe that the increased density of the proposed development would not necessarily bring some traffic increase. *Ward v. County of Cook* (1979), 68 Ill. App. 3d 563, 386 N.E.2d 309.

■■ ■ The objections of the residents whose homes face the subject property cannot be discounted. Although the homeowners were not asked to estimate the dollar amount of depreciation to their property, they did indicate that they relied on the existing R-1 zoning when constructing their homes. The expectations of adjacent property owners are entitled to some weight (*Vedovell v. City of Northlake* (1961), 22 Ill. 2d 611, 177 N.E.2d 124; *Bolger v. Village of Mount Prospect* (1957), 10 Ill. 2d 596, 141 N.E.2d 22), including aesthetic considerations (*Ward v. County of Cook* (1979), 68 Ill. App. 3d 563, 386 N.E.2d 309). If the proposed buildings are constructed by plaintiffs, the view from the homes on the east side of Kilpatrick Avenue will be the sides of the three-story structures and the parking spaces in back, instead of the single-family residences which these homeowners expected when they chose to face their homes onto Kilpatrick Avenue. The right of every property owner to rely on the zoning classification in effect when his property was purchased

is one factor of crucial importance. *Oak Park National Bank v. City of Chicago* (1973), 10 Ill. App. 3d 258, 294 N.E.2d 42.

The record includes testimony of the village's real estate expert that the proposed use would negatively affect the value of the homes across Kilpatrick Avenue to the east and the Granata home to the north. In comparison, there is testimony on behalf of both sides indicating there is a demand for both condominium and single-family homes in the village and that the property could be developed as single-family homes facing Kilpatrick Avenue and backing up to the existing multifamily uses. Witnesses estimated that the price of single-family homes constructed in this manner would exceed the appraised value of many of the homes in the surrounding area; however, it is not unreasonable to assume that the inflated cost of new construction balanced against the rapid growth in the cost of comparable real estate would eventually bring the property values into parity. The suitability of plaintiffs' property for single-family use is further demonstrated by the single-family development on the west side of Kilpatrick Avenue, north of 105th Street, where multifamily and single-family residences have been built back-to-back. There is no apparent reason why the subject property could not be utilized in a similar manner.

■■ ■ In conclusion, we find that the plaintiffs failed to overcome the presumptive validity of the zoning ordinance by clear and convincing evidence. Where the expert witnesses express conflicting opinions as to the reasonableness of the ordinance as applied to the subject property, the court must determine whether there is justification for legitimate differences of opinion. (*Union National Bank v. Village of Oak Lawn* (1971), 133 Ill. App. 2d 634, 273 N.E.2d 461.) The evidence in this case raises a question that is, at best, debatable, and, thus, the court must yield to the legislative judgment of the village.

The judgment of the circuit court of Cook County is reversed.

Reversed.

JOHNSON and ROMITI, JJ., concur.