RALPH J. GUST *et al.*, Plaintiffs-Appellees, *v.* THE VILLAGE OF WEST-CHESTER *et al.*, Defendants-Appellants.

First District (1st Division)   No. 81—2006

Opinion filed October 25, 1982.—Rehearing denied December 7, 1982.

Ross, Hardies, O'Keefe, Babcock & Parsons, of Chicago (R. Marlin Smith, Wendy U. Larsen, and David H. Kistenbroker, of counsel), for appellants.

Ralph J. Gust, Jr., of Lombard, for appellees.

JUSTICE McGLOON delivered the opinion of the court:

Plaintiffs, owners of properties improved with single-family residences, brought an action seeking a declaratory judgment invalidating a village of Westchester zoning ordinance which reclassified four lots adjacent to and fronting the homeowners' properties from R-1 (single-family residential) to B-2 (restricted business). The current owners of the four lots, Jetco, Inc. (a subsidiary of Jewel Companies, Inc.), intended to raze the residences on the lots to expand the existing food store. The circuit court of Cook County held that the plaintiffs demonstrated by clear and convincing evidence that the village of Westchester acted without due cause in granting the zoning change. Prior to this appeal, the village of Westchester voluntarily withdrew as a party-appellant.

On appeal, defendants Jewel Companies, Inc., and Jetco, Inc., contend that (1) the plaintiffs failed to establish by clear and convincing proof the invalidity of the zoning ordinance, and (2) the trial court applied improper or erroneous rules of law.

We affirm.

The property which is the subject of this litigation consists of four

lots improved with three well-maintained single-family residences which face north toward Dorchester Avenue in the village of Westchester (Village). The properties were zoned R-1 (single-family residential) and were occupied as such prior to their acquisition by defendants, Jewel Companies, Inc. (Jewel), through its subsidiary Jetco, Inc. (Jetco). After purchasing the properties, Jewel sought a zoning change from R-1 to B-2 (restricted business) to accommodate its proposed site design plan. On November 23, 1978, Jewel was granted the zoning change by an ordinance enacted by the Village. Thereafter, plaintiffs filed their complaint for declaratory judgment.

Plaintiffs, Ralph J. and Gertrude Gust, have owned their residence since 1954. It is located northwest of the subject property and faces south toward Dorchester Avenue. Plaintiffs, Paul J. and Sonia Capri, have resided in their home since 1960. It is located directly north of the subject property and also faces south toward Dorchester Avenue. The surrounding neighborhood is a long-established single-family residential area. The three residences that Jewel seeks to raze are part of that neighborhood and serve as a buffer between the plaintiffs' homes and the Jewel store, almost completely blocking their view of the existing Jewel.

The Jewel store is located in a small shopping center at 230 South Mannheim Road, immediately south of the subject property at the northwest corner of the intersection of Mannheim and Cermak Roads. Presently the only customer entrance to the food store faces Mannheim Road. Trucks making deliveries enter from Mannheim Road, proceed across the parking lot to a public alley directly south of the food store which borders commercial buildings to the loading dock area at the rear and west of the food store. Details of the proposed site plan include demolishing the three existing residences and expanding the existing food store north onto the subject property, thereby adding an additional 20,000 square feet. The plan also features construction of a driveway just south of Dorchester Avenue and the addition of a parking lot to the west of the food store behind the loading area. A five-foot pedestrian walkway along the new driveway is included to accommodate pedestrians walking from their automobiles parked in the rear parking lot to the front entrance. A six-foot cedar fence and some trees will be planted to serve as a buffer between the newly expanded commercial area and the residential neighborhood.

Both parties to this appeal presented evidence regarding the impact of the rezoning and the proposed expansion of the food store as it relates to the parties themselves, the public and the neighborhood.

After hearing extensive testimony, the trial court held that the plaintiffs demonstrated by clear and convincing evidence that the Village acted without due cause in granting the zoning change requested by Jewel because there was no real or substantial relation to the public health, safety, morals, comfort and general welfare and that the ordinance effecting the zoning change was therefore void.

The principal issue in this appeal is whether the plaintiffs failed to establish by clear and convincing evidence the invalidity of the rezoning ordinance.

It has been firmly established by case law that zoning is a legislative function, subject to court review only where the party attacking the validity of the ordinance establishes by clear and convincing evidence that the ordinance is arbitrary and unreasonable and has no substantial relation to the public health, safety, or welfare. The plaintiffs' burden is a heavy one due to the fact that a zoning ordinance is presumptively valid. (*La Salle National Bank v. County of Cook* (1957), 12 Ill. 2d 40, 145 N.E.2d 65; *American National Bank & Trust Co. v. Village of Oak Lawn* (1980), 81 Ill. App. 3d 952, 401 N.E.2d 963.) We agree with the trial court's finding that plaintiffs have met this burden.

The factors relevant to our determination, as set forth in *La Salle*, are: (1) the existing uses and zoning of nearby property; (2) the extent to which property values are diminished by the particular zoning restrictions; (3) the extent to which the destruction of property values of plaintiff promotes the health, safety, morals, or general welfare of the public; and (4) the relative gain to the public as compared to the hardship imposed upon the individual property owner. (*American National Bank & Trust Co. v. Village of Oak Lawn* (1980), 81 Ill. App. 3d 952, 958, 401 N.E.2d 963, 967, citing *La Salle National Bank v. County of Cook* (1957), 12 Ill. 2d 40, 46-47, 145 N.E.2d 65, 69.) An additional factor considered to be of crucial importance is the right of every property owner to rely on the zoning classification in effect when his property was purchased. *American National Bank & Trust Co. v. Village of Oak Lawn* (1980), 81 Ill. App. 3d 952, 960-61, 401 N.E.2d 963, 968, citing *Oak Park National Bank v. City of Chicago* (1973), 10 Ill. App. 3d 258, 294 N.E.2d 42.

The first factor which we consider is whether the subject property is zoned in conformity with the surrounding existing uses and whether those are uniform and established. The defendants contend that the proposed site plan merely extends the commercial area because the subject property was rezoned to the same classification as the abutting shopping center, and both the residential and commercial

uses were long established. However, this argument ignores the fact that there is a definite demarcation between the residential community and the commercial area. Plaintiffs introduced testimony that the commercial area is confined to a strip along Mannheim and Cermak Roads and the shopping center and Jewel's proposed expansion would thereby constitute an intrusion into an established neighborhood. The three residences that Jewel seeks to destroy are an integral part of a residential neighborhood where, for a distance of seven blocks the residences face each other. As in *American National Bank & Trust Co.,* the neighborhood was "planned to allow similar uses to face each other, an admittedly accepted zoning practice." (81 Ill. App. 3d 952, 959.) Here, as in *American National Bank & Trust Co.,* the residential neighborhood has maintained its R-1 zoning for a substantial period of time and evidence was presented which clearly demonstrates that the plaintiffs relied on the R-1 zoning when they purchased and improved their property. The homes on the subject property face the residential district, and presently act as buffers and constitute a reasonable demarcation between the residential and business areas.

Following the proposed expansion, the residents on the north of Dorchester Avenue would face a commercial area buffered only by a six-foot fence and some trees. For the first time, semi-trailer trucks approximately 55 feet long and over 12 feet high would be traveling down Dorchester Avenue, entering the subject property and then driving west along the driveway behind the fence. Trucks presently enter the loading area from Mannheim Road, which is a major thoroughfare. Plaintiffs' expert witness, Major Hearn, Jr., regional manager of the division of noise pollution control, Illinois Environmental Protection Agency, testified that trucks entering the subject property from Dorchester Avenue would disturb citizens living along the north side of the food store and that property owners on the west side would be inconvenienced by increased traffic and noise. He further testified that, based on his observation, trucks unloading would probably violate noise emission standards. The trial court properly concluded that the "existing use and zoning of nearby property" criteria weighs in favor of plaintiffs.

Both parties presented conflicting expert testimony regarding the extent to which property values are diminished by the particular zoning restrictions; however, defendants' expert witness testified that homes would be more difficult to sell. A reviewing court will not disturb the trial court's finding unless it is against the manifest weight of the evidence. (*La Salle National Bank v. County of Cook* (1957), 12 Ill. 2d 40, 145 N.E.2d 65.) The record amply supports plaintiffs'

position.

We also consider whether the rezoning promotes health, safety, morals or general welfare. The defendants contend that unless the expansion is permitted, the shopping center is destined for deterioration. However, we find nothing in the record to support defendants' allegations that the food store is presently losing money, or that the testimony established that Jewel would close if the expansion was not allowed. Testimony presented by plaintiffs' experts, however, indicates that pedestrians, cars and semi-trailer trucks would conceivably be in a 25-foot driveway simultaneously, supporting the trial court's conclusion that the proposed rear parking facility poses a safety hazard to the public.

Under *La Salle* the relative gain to the public should be compared to the hardship imposed upon Jewel. Absent the zoning change and consequent expansion, the hardship imposed upon defendants is an asserted loss of profits. In the instant case, the trial court properly found that defendants' hardship is outweighed by the public interest in safety and maintaining the integrity of the established residential neighborhood.

In addition, Illinois courts have adopted the modern view that aesthetic factors such as the aesthetic enjoyment of one's home, do have a significant bearing on zoning. (*Amalgamated Trust & Savings Bank v. County of Cook* (1980), 82 Ill. App. 3d 370, 402 N.E.2d 719; *Ward v. County of Cook* (1979), 68 Ill. App. 3d 563, 386 N.E.2d 309.) The adverse effects which would ensue by the proposed plan are analogous to those complained of in *Amalgamated*, where the court stated, "[e]ven ignoring the added population, traffic and noise, it can hardly be said that the building of a 125-foot water tower is conducive to the neighbors' enjoyment of their property." (82 Ill. App. 3d 370, 383.) That court went on to characterize a six-story apartment house as a "drastic alteration" as compared to a three-story multi-family building across the street. Surely, the changes complained of in the case at bar are just as drastic.

We therefore conclude that plaintiffs met their burden of proof. The evidence established that the proposed expansion would intrude on and destroy an integral part of an established residential neighborhood, cause increased traffic and noise, present safety hazards, and diminish the residential property owners' enjoyment of their property. Thus, the trial court's finding is not against the manifest weight of the evidence.

The second issue raised by defendants is whether the trial court applied improper legal principles. However, the trial court applied the

same rules of law as we have applied in this appeal. These standards are applied consistently by the courts of this State and are correct.

For the foregoing reasons, we affirm the judgment of the circuit court of Cook County.

Judgment affirmed.

GOLDBERG and O'CONNOR, JJ., concur.