OAK LAWN TRUST & SAVINGS BANK, Trustee, *et al.* Plaintiffs-Appellees, *v.* THE CITY OF PALOS HEIGHTS, Defendant-Appellant.

First District (5th Division)   No. 81—2738

Opinion filed May 20, 1983.—Rehearing denied July 6, 1983.

Swanson, Ross, Hanfling & Block, of Chicago (Warren L. Swanson and Richard H. Kane, of counsel), for appellant.

Jack M. Siegel, of Chicago, for appellees.

JUSTICE MEJDA delivered the opinion of the court:

Plaintiffs Oak Lawn Trust & Savings Bank as trustee and Thomas Powell filed a complaint for declaratory judgment against defendant city of Palos Heights asking that the zoning ordinance of defendant be declared invalid insofar as it prevents the redevelopment of an existing school building on the subject property for professional office purposes. Following a bench trial, the court entered judgment for plaintiffs. We affirm.

The subject property (the property) consists of approximately 1.5 acres of land located in the city of Palos Heights, Illinois. It has a

frontage of 185.7 feet on the north side of 127th Street and a depth of 340.8 feet along the east side of 69th Court. Currently zoned under the "R" single-family zoning classification, it is subdivided into four single-family residential lots. The property is improved with a one-story grammar school building.

As it fronts the property, 127th Street is a two-lane arterial highway having a traffic count of approximately 14,500 cars per day; 69th Court is a paved street, 18 feet wide, having a 33-foot right-of-way. There are no sidewalks along 69th Court, and there is a storm swale along one side.

Single-family residences abut the property on the north and east sides and on the west, across 69th Court. To the south of the property, across 127th Street, are single-family residences. To the southwest a church and parking lot extend westward, covering the entire block between 69th Court and 70th Avenue. Immediately west of the property, between 69th Court and 70th Avenue, are two residential structures which front on the north line of 127th Street. The structure closer to the property is used as a real estate office although no exterior sign indicates this commercial usage.

Commencing one block west of the property is an area zoned B1, Restricted Business. Two blocks west of the property is an area zoned B, Business. The heart of this commercial area is located at the intersection of 127th Street and Harlem Avenue, three blocks from the subject property. This commercial area extends outward in all directions from said intersection and contains several restaurants, a dry-cleaning establishment, a vision center, a barber shop, several beauty salons, a funeral home, a travel agency, a medical center, a pharmacy and a bank and trust company. Also located within this area are a supermarket, gasoline and service stations, a home center, a kitchen and bath shop, a pet store, and various other offices and shops.

Powell, plaintiff and beneficial owner of the property, purchased it at a public auction in March of 1975 from the Palos Heights Board of Education School District No. 128. He paid $100,000 for the property, including the land and building. The existing one-story structure contains 11,720 square feet and was utilized as a grade school until 1975.

Since acquisition the property has, for the most part, remained vacant and unused. Portions of the building have been leased for brief periods and used as a church, a political campaign headquarters, a dancing school, and for various other activities. Plaintiffs have tried to sell the property but have received only one signed offer to purchase. That offer was conditioned upon approval by the city of a prior

request for a change in zoning, which request was denied. Subsequent to that denial, the city submitted an unsigned contract to purchase the property for $165,000 but later withdrew its offer.

Plaintiffs propose to remodel the existing structure in accordance with a plan submitted to the trial court for use as a professional and medical office building. The area of the building would be increased from 11,720 to 15,800 square feet, of which approximately 11,500 square feet would be rentable office space.

Rolf C. Campbell, a city planning consultant, testified that in his opinion the highest and best use of the property would allow productive use of the existing structure; the proposed use would have no material adverse effect on surrounding properties and is reasonable from a zoning and planning standpoint; and although the property is suitable for single-family residences, that is not its highest and best use. He stated that, as proposed, the developed property will have a market value of approximately $870,000 and will provide the city with $46,000 annually in tax revenue; the value of the property would be less for single-family use; approximately 100 persons would be employed in the subject property as proposed; and the proposed use would have no significant impact on 69th Court.

Also testifying for plaintiff was Joseph Zgonina, a registered professional engineer involved in the areas of civil and traffic engineering. He stated that, based on the existing and projected volume of traffic, the proposed development of the property would have no adverse impact on the existing roadway system and, further, that 69th Court has more than adequate capacity to accommodate the projected volume of traffic.

William A. McCann, a real estate appraiser, testified that the highest and best use of the property would be achieved through renovation of the existing structure and development of professional offices. He stated that the value of the property is $80,000 as presently zoned. He testified, however, that the property is unsuitable for the purpose for which it is presently zoned based on the fact that there are no new single-family residences being constructed facing 127th Street, the market for single-family housing is depressed, and in order to use the property in accordance with its present zoning the existing structure would have to be demolished. He concluded that the proposed renovation is a reasonable use of the existing structure and would not diminish the value of surrounding properties.

Defendant presented the testimony of planning and zoning consultant Allen Trayser and real estate appraiser Thomas M. Collins who concurred that the highest and best use of the property is single-

family residences. Collins presented evidence that the value of the property developed for single-family residences is $135,000. Traffic engineer Gerald Lindgren testified that although 127th Street has adequate capacity to accommodate the volume of traffic, 69th Court cannot adequately accommodate the type of traffic that will be generated. A school teacher and alderman of the city of Palos Heights stated that in her opinion the proposed development would have an adverse impact on the health, safety and welfare of the community due to the anticipated increase volume of traffic. Other area residents testified that they thought that the proposed use of the subject property would result in more traffic and would adversely affect property values in the immediate area.

Following a bench trial at which the above evidence was presented, the circuit court found for plaintiffs and declared (1) that the zoning ordinance is unconstitutional as applied to the subject property insofar as it prevents the proposed use by plaintiffs, and (2) that the proposed use of the subject property is reasonable.

OPINION

■ On appeal, defendant first contends that the trial court erred in finding that the "R" single-family zoning classification is without any reasonable justification insofar as it precludes plaintiffs' proposed use of the property. It is well established in Illinois that a zoning ordinance is presumed valid and will be upheld if it bears any substantial relationship to the public health, safety, comfort or welfare. (*Tomasek v. City of Des Plaines* (1976), 64 Ill. 2d 172, 354 N.E.2d 899; *County of Cook v. Priester* (1976), 62 Ill. 2d 357, 342 N.E.2d 41.) A party challenging a zoning ordinance must establish by clear and convincing evidence that the ordinance as applied is invalid (*Tomasek*) and, further, that the proposed use of the property is reasonable. *Drogos v. Village of Bensenville* (1981), 100 Ill. App. 3d 48, 426 N.E.2d 1276.

The factors to be considered in determining the validity of a zoning ordinance are as follows: (1) the existing uses and zoning of nearby property; (2) the extent to which property values are diminished by the particular zoning restriction; (3) the extent to which the destruction of property values of plaintiff promotes the health, safety, morals or general welfare of the public; (4) the relative gain to the public as compared to the hardship imposed upon the individual property owner; (5) the suitability of the subject property for the zoned purposes; and (6) the length of time the property has been vacant as zoned, considered in the context of land development in the area in the vicinity of the subject property. (*La Salle National Bank v.*

*County of Cook* (1957), 12 Ill. 2d 40, 46-47, 145 N.E.2d 65, 69.) The validity of each zoning ordinance must be determined on its own facts and circumstances; no single factor is controlling. *La Salle;* *Ward v. County of Cook* (1979), 68 Ill. App. 3d 563, 386 N.E.2d 309.

A review of the record discloses that the court properly considered all of the factors set forth in *La Salle* and that its decision that the zoning ordinance is invalid as applied to plaintiffs' proposed development is supported by the evidence. Regarding the existing uses and zoning of nearby property, the testimony revealed that although the property immediately adjacent to the subject property is zoned R, Single-family Residential, less than two blocks away is a heavily concentrated area of commercial development. Such commercial area actually begins only one block from the property and is separated from the property by two houses, one of which is used as a real estate office. A church and large parking lot are situated directly across 127th Street from the property on the southwest corner of 69th Court, and a dental office building is located approximately 1½ blocks east of the subject property.

The second and third factors for consideration are the extent to which plaintiffs' property values are diminished by the particular zoning restriction and the extent to which such diminution of property values promotes the health, safety, morals or general welfare of the public. First, the evidence clearly shows that the present zoning classification decreases the value of the property. Witnesses for plaintiffs testified that the value as zoned for single-family residences is $80,000 but, if used as plaintiffs propose, the value would be $250,000. Defendant's witness testified that the value as zoned is $135,000. Under the present zoning there is, therefore, a loss in value of between $115,000 and $170,000. Defendant argues that plaintiffs have utilized the property for uses permitted under the present zoning classification by leasing it as a church and a school and, furthermore, that plaintiffs could easily sell the property for such purposes. However, the property has produced only $11,000 in rental income since its acquisition and attempts to sell or lease the property have been futile. The foregoing evidence is sufficient to establish that the value of the subject property is diminished by its present zoning.

The next consideration is whether such diminution in value promotes the health, safety, morals or general welfare of the public. The principal opposition to plaintiffs' proposed use is that it will result in a substantial increase in traffic on 127th Street and on 69th Court. However, the evidence is contradictory as to whether such increased traffic will be detrimental to the public health, safety or general wel-

fare. Plaintiffs' expert witness testified that both 69th Court and 127th Street have adequate capacity to accommodate the projected volume of traffic and that the proposed development of the property would not have an adverse impact on the existing roadway system. A witness for defendant concurred in the finding that there was adequate capacity to accommodate the increased traffic but made an exception for access provisions to the proposed development. Similarly, conflicting testimony was presented regarding adequacy of parking and whether the proposed use constitutes a more intense impact upon the surrounding area than that which existed when the building was utilized as a grammar school. The credibility of witnesses and the weight to be accorded their testimony are determined by the trier of fact (*Northbrook Trust & Savings Bank v. County of Cook* (1977), 47 Ill. App. 3d 879, 889, 365 N.E.2d 433, 441, citing *Bauske v. City of Des Plaines* (1957), 13 Ill. 2d 169, 181, 148 N.E.2d 584, 591), and such findings will not be disturbed unless manifestly against the weight of the evidence. (*Northbrook.*) Accordingly, the finding that the health, safety, morals or general welfare of the public are not promoted by the diminution in the value of plaintiffs' property will not be disturbed.

Although area residents testified that they believe plaintiffs' proposed use will result in increased traffic and a diminution in their property values, this is not sufficient to uphold the validity of a zoning ordinance. Property use cannot be restricted or limited merely because neighboring property owners so desire, or because they believe it will protect the value of their residences. (*Regner v. County of McHenry* (1956), 9 Ill. 2d 577, 138 N.E.2d 545; *Northbrook.*) To be held valid, a zoning restriction must have a rational connection with the promotion of public health, safety, morals or welfare. (*Regner*; *Northbrook.*) The evidence is sufficient to support the finding that the zoning ordinance at issue does not promote the public health, safety, morals or welfare.

The fourth factor is the relative gain to the public as compared to the hardship imposed upon the individual property owner. As the foregoing review indicates, enforcement of the present zoning results in no demonstrable benefit to the public.

The fifth factor is the suitability of the property for the zoned purposes. Plaintiffs presented evidence to show that the property is not suitable for single-family residences, for which it was zoned. Plaintiffs' repeated attempts to lease or sell the property for uses permitted under such zoning have not been successful. Developing the property for residential use would require that the existing structure

be destroyed. Moreover, testimony at trial demonstrated that the housing market for single-family residences is generally depressed and that there have been no single-family residences constructed fronting on 127th Street in the last decade. (See *Northbrook.*) The evidence supports a finding that the property is not suitable for single-family residence use as zoned.

The final factor is the length of time the property has been vacant as zoned, considered in the context of land development in the vicinity of the subject property. The property has been vacant, for all intents and purposes, since it was acquired in 1975, and the evidence indicates that it will remain so under the present zoning restriction. Testimony was presented that commercial development, expansion and renovation have taken place within the last 10 years, but that there has been no residential construction on 127th Street in the vicinity of the property within the last six years. The existing structure is not likely to be used for any purpose for which it is presently zoned. Although it is possible that the existing structure could be demolished and the property developed for single-family residential use, testimony at trial revealed that such development would be impractical in consideration of the generally depressed state of the market for single-family residences and of the nature of recent construction on 127th Street. Accordingly, the findings that the character of the area surrounding the property would not be adversely affected, that no traffic problem would result from plaintiffs' proposed use, that the zoning ordinance is invalid insofar as it precludes plaintiffs' proposed use, and that the proposed use is reasonable, all are supported by the evidence. Therefore, the trial court's findings will not be disturbed since they are not against the manifest weight of the evidence. *Pioneer Trust & Savings Bank v. County of Cook* (1978), 71 Ill. 2d 510, 377 N.E.2d 21.

■ Defendant next contends that the court erred by placing undue weight on the fact that the school building exists on the property. No single factor is controlling in a determination of the validity of a zoning ordinance; each case must be decided on its own facts and circumstances. (*La Salle National Bank v. County of Cook* (1957), 12 Ill. 2d 40, 145 N.E.2d 65.) The facts and circumstances of plaintiffs' proposed use include not only the land, but also the use and redevelopment of the existing school building located thereon. The proposed use is not a permitted use of either such building or the land under the restrictions of the present zoning classification. Therefore, the court did not err but properly considered the school building, as then existing and the redevelopment thereof, together with the land consti-

tuting the property in determining both the validity of the zoning ordinance as applicable and the reasonableness of the proposed use.

■ Defendant further contends that the trial court erred in finding that the sale of the property to plaintiffs by a public agency, the school district, exempted the property from the zoning ordinance imposed by another public agency, defendant city, which ordinance regulates use, parking and bulk area. Defendant relies upon one paragraph. of the final judgment order in which the court found that "the same public represented by the school district in selling the land and building to plaintiffs for $100,000 now seeks to deprive the plaintiffs, through the actions of the defendant City, of the use and value of said property." The contention is without merit. The trial court did not thereby find the property exempt from the zoning ordinance nor base the invalidity thereon. Instead, the finding was merely incidental to determining the relative gain to the public and the hardship upon plaintiffs, and also whether the zoning as applied to the property bears substantial relationship to the public health, safety and welfare. *American National Bank & Trust Co. v. Village of Oak Lawn* (1979), 81 Ill. App. 3d 952, 401 N.E.2d 963; *Littlestone Co. v. County of Cook* (1974), 19 Ill. App. 3d 222, 311 N.E.2d 268.

■ The final issues raised by defendant concern evidentiary matters. The first is defendant's contention that the court erred by admitting into evidence a written real estate appraisal of the subject property prepared by John Shanahan Associates and dated March 18, 1980. The appraisal was prepared pursuant to a request of the city attorney incident to a prior offer of defendant to purchase the property, which offer was then withdrawn. The appraisal contains the appraiser's opinion that, taking into consideration the location and physical features of the property and the current commercial market in the area, the highest and best use for the property would have been as a professional office facility. The appraisal concludes, however, that upon consideration of the city's denial of several zoning change requests "the highest and best [use] of the subject property, at this time, in our opinion, would be the permitted uses under the existing zoning, R-Residence." Plaintiffs secured the appraisal in discovery and utilized it in the cross-examination of Collins, defendant's real estate expert, regarding his opinion that the highest and best use of the property is for single-family residences. The court allowed such usage without the testimony of the appraiser and over defendant's objection, stating that it was for cross-examination only, not as substantive evidence. At the close of defendant's case, plaintiffs offered the appraisal for admission into evidence in rebuttal of Collins' testimony.

In its final order the court overruled all objections and admitted the appraisal into evidence.

Defendant contends that the appraisal is hearsay and irrelevant and, therefore, its admission was error. Plaintiffs argue first that the appraisal is "discoverable and admissible," citing *City of Bloomington v. Quinn* (1969), 114 Ill. App. 2d 145, 252 N.E.2d 10. *Quinn* held that the court's failure to allow discovery of an appraisal constituted error, albeit harmless error. The question in the instant case is, however, not discoverability but admissibility, and we do not find *Quinn* applicable. Plaintiffs argue next that the appraisal was properly admitted under the public records exception to the hearsay rule. The Illinois Supreme Court has defined those records which come within such exception stating: "At common law it has long been settled as an exception to the hearsay rule that records kept by persons in public office, which they are required either by statute or the nature of their office to maintain in connection with the performance of their official duties, are admissible in evidence and are evidence of those matters which are properly required to be maintained and recorded therein." (*People ex rel. Wenzel v. Chicago & North Western Ry. Co.* (1963), 28 Ill. 2d 205, 211-12, 190 N.E.2d 780, 784.) In the instant case there is no evidence that any of the above elements are present and, therefore, the appraisal does not come within the public records exception to the hearsay rule. Moreover, records which concern causes and effects, involve the exercise of judgment and discretion, expressions of opinion, or the drawing of conclusions are not admissible under the public records exception. (*Lombard Park District v. Chicago Title & Trust Co.* (1969), 105 Ill. App. 2d 371, 245 N.E.2d 298.) In the instant case the appraisal clearly involves the exercise of judgment and the expression of an opinion and, therefore, does not come within the public records exception.

■ Plaintiffs argue also that the appraisal is admissible as an admission by an agent. A statement of an agent, when made in the exercise of his duties and pertaining to matters within the scope of his authority, may constitute an admission binding on the principal which can be introduced substantively against the principal. (*Taylor v. Checker Cab Co.* (1975), 34 Ill. App. 3d 413, 339 N.E.2d 769.) Here, however, there is no evidence that the author of the appraisal was an agent of defendant or was expressly authorized to make statements for defendant, nor is there evidence that defendant ever ratified the appraiser's statement or adopted it as its own. (See *Taylor.*) In the absence of such evidence, the appraisal is inadmissible against defendant and, therefore, the court erred in admitting it into evidence.

■ Error in the admission of evidence does not require reversal, however, where there has been no prejudice (*Cowan v. Wheeler* (1979), 76 Ill. App. 3d 259, 395 N.E.2d 32) or where the evidence has not materially affected the result. (*Walters v. Taylor* (1976), 36 Ill. App. 3d 934, 344 N.E.2d 765.) In the instant case, plaintiffs requested admission of the appraisal only on the issue of the highest and best use of the property. Both sides had presented the.testimony of expert witnesses on that issue. In view of the fact that the information contained in the appraisal regarding the highest and best use of the property had already been received into evidence from other sources, the admission of the appraisal into evidence for the limited purpose stated could not be construed as prejudicial to defendant or constitute reversible error. (*Cummings v. Chicago Transit Authority* (1980), 86 Ill. App. 3d 914, 408 N.E.2d 737; see *Jacobs v. Holley* (1972), 3 Ill. App. 3d 762, 279 N.E.2d 186.) Where the testimony in a trial without a jury is contradictory, the weight to be given to that testimony is a matter for the trial court and its findings will not be disturbed unless against the manifest weight of the evidence. (*Aurora National Bank v. City of Aurora* (1976), 41 Ill. App. 3d 239, 353 N.E.2d 61.) In view of the proposed limited use of the appraisal and applying the principle that only competent evidence is considered by the trial court (*Padgett v. City of Oakbrook Terrace* (1967), 89 Ill. App. 2d 244, 231 N.E.2d 466), we conclude that defendant was not prejudiced by the admission of the appraisal and that such error does not warrant reversal.

■ Defendant next contends that the court erred in refusing to strike portions of testimony allegedly constituting an attempted impeachment of defendant's former mayor, William J. Bailey. Plaintiffs called Bailey as an adverse witness under section 60 of the Civil Practice Act (Ill. Rev. Stat. 1981, ch. 110, par. 60), now codified as section 2—1102 of the Code of Civil Procedure (Ill. Rev. Stat. 1981, ch. 110, par. 2—1102), and questioned him regarding statements purportedly made in 1979. Responding to plaintiffs' questions, Bailey testified that he did not recall having stated that he proposed to negotiate with Powell to buy the property for the city after the city's denial of plaintiffs' request for a zoning change. Bailey also stated that he did not recall stating that he would personally veto plaintiffs' zoning request. Plaintiffs made no attempt to prove the allegedly impeaching statements.

Although the rule in Illinois regarding impeachment by a prior inconsistent statement is that once the foundation is laid counsel must offer proof of the allegedly impeaching statements (*Rigor v. Howard Liquors, Inc.* (1973), 10 Ill. App. 3d 1004, 295 N.E.2d 491), failure to

prove the impeachment does not of necessity constitute reversible error. (*People v. Williams* (1969), 105 Ill. App. 2d 25, 245 N.E.2d 17.) In view of the substantial amount of evidence presented in the instant case and the minimal relative importance of the above questions and answers, we conclude that although it constitutes error, plaintiffs' failure to prove the impeaching statements does not warrant reversal. See *Walters v. Taylor* (1976), 36 Ill. App. 3d 934, 344 N.E.2d 765.

■ Finally, defendant contends that the court erred in failing to declare a mistrial after the introduction of what defendant characterizes as "inadmissible, inflammatory and prejudicial evidence." The evidence objected to consists of questions and answers concerning Bailey's involvement in other unrelated litigation which arose out of his alleged misconduct in office, the above-described attempted impeachment and the admission of the appraisal report. In a case relied upon by defendant, the court stated that although it is presumed that the trial judge considered only competent evidence, this presumption may be rebutted where the record affirmatively shows the contrary. (*Drovers National Bank v. Great Southwest Fire Insurance Co.* (1977), 55 Ill. App. 3d 953, 371 N.E.2d 855.) There is no basis for us to conclude that the court relied upon any inadmissible evidence in reaching its decision. Bailey's testimony concerning possible involvement in other litigation was not so unduly prejudicial nor inflammatory as to require reversal. Regarding admission of the attempted impeachment and the appraisal report, as stated above, it likewise does not appear that defendant was prejudiced thereby. Any error was at most harmless. Moreover, in a trial without a jury, error in admitting testimony will be regarded as harmless if there is sufficient evidence to sustain the judgment of the court. (*McFail v. Braden* (1960), 19 Ill. 2d 108, 166 N.E.2d 46; *In re Wheeler* (1980), 86 Ill. App. 3d 564, 408 N.E.2d 424.) Our examination of the record shows that there was sufficient evidence to support the judgment of the trial court. We find, therefore, that the court did not err in refusing to declare a mistrial.

Accordingly, for the reasons stated herein, we affirm.

Affirmed.

WILSON, P.J., and SULLIVAN, J., concur.